at all. In 14-1052, event ESF has for Gisome Alvarez-Rubio at all. Counsel. Morning, Your Honors. My name is Jorge Martinez-Luciano. I will be arguing for the appellants, the plaintiffs in this case. Yes, proceed. This is a case where a group of former and current State Insurance Fund employees challenged the decision to annul their appointment to career positions based on an equal protection selective enforcement theory. The case was dismissed on the grounds that the plaintiffs failed to identify a group of similarly situated individuals who were treated differently from the plaintiffs, that is, to whom the rule that was being enforced was applied. The record shows that the plaintiffs were dismissed as part of an audit that was purportedly hunting for merit principle violations. It found 232 appointments through closed job announcements, which is what concerns the plaintiffs in this case, and it also found three other employees who had been reclassified from trust positions to career positions improperly, as found by the auditors. The record shows that all personnel files of all agency employees were audited, yet these were the only findings. The summary judgment record contains appointment letters in which transitory or temporary employees are appointed to career positions without any competition whatsoever. In the case of the plaintiffs, there was competition internally because there were job announcements that only current employees could apply for. The individuals who were appointed without any competition prior to 2001, because this is the only distinction between the two groups of employees who had been appointed without open competition, the ones that were in all were appointed after 2001 after a change in political administration, the ones that were not affected by this ruling were appointed prior to 2001. That is the only distinction. No, that is not the only distinction. Your clients lost their jobs because their employer said that they had obtained the jobs in violation of the merit principle. It was a particular application of the merit principle. The three other categories all involve different fact situations, do not involve the same claim of the same violation of the merit principle. That people were appointed in the 1990s without any job announcement is not parallel to your situation. That physicians got managerial positions, again, is dissimilar. And union employees are just per se dissimilar. So that is my initial take on this case. Here is an opportunity to tell me why I am wrong. Well, Your Honor, it is the same merit principle violation. It is only a matter of degrees because, as a matter of fact, the facts of this case went all the way up to the Puerto Rican court, which affirmed the conclusion that this was a violation of the merit principle. Correct. And, as a matter of fact, that decision, a translation of that decision is in the record. And from that decision, the court emphasizes the need for open competition as a requisite, a sine qua non requisite for obtaining career status in public employment. These plaintiffs did not participate in open competition. They were participants in closed competition. The 1990s appointees, they did not participate in any competition whatsoever. But it is the same principle. There must be an open job announcement that announces to the general public that a career position has opened. And the agency must allow qualified candidates to compete for that position. That did not happen in the 1990s at all because it was just a letter giving career status by decree without any competition. And it did not happen in the post-2001 appointments because it was a closed job announcement that did not let the general public beyond the current employees know what was going on. It should be noted that throughout the record and in the audit itself, what defendants state that they were doing, they were trying to vindicate the merit principle. They were looking for merit principle violations, any merit principle violations. They were not hunting specifically for merit principle violations related to the use of closed job announcements. As a matter of fact, the report contains three other findings that have nothing to do with open competition. They have to do with application of a regulation that allowed the transmutation of trust positions to career positions. Indeed, last year, the Senate will court, and I believe your Honor was in that panel, decided the Reyes case, which was an attorney who was one of the three employees that was affected. I do remember the case, yes. We get a lot of these cases. So the common threat here is not a specific merit principle violation. It's the existence of a merit principle violation. And it is interesting that neither on the district court level or on appeal have the defendants stated those appointments in the 1990s were not in violation of the merit principle. They have not said that. They have tried to split hairs saying, well, in the 2009 audit, we annulled appointments across party lines, and we only looked at post-2001 transactions, personal transactions, because there was an audit performed prior to 2001. And that is heavily contested in the record. How far are they required to go back in time? Well, if their intent is true, if what they state is true, and they're hunting for merit principle violations, and they're reviewing every single personal file in the agency to find or try to gather merit principle violations and correct the situation, they should do what they say that they intended to do, check every single file and point out and remedy any merit principle violation that they encountered. But that's not what they did. But nobody does that in their business or their life. You have some sense of, I'm only going to go back in time so far. Things get stale. Expectations get settled. And so they go back, what, eight years, if I remember correctly? And you're saying they had to go back. They go back precisely to the changeover in political administration that happened in 2001, immediately following the 2000 general elections. They do not go beyond that. And what they say is, we don't do it because there was, and I believe this is important because in any discrimination case, proof that the stated reason for what is being done is false may be probative of discriminatory intent. And the only reason that they give at the time is that we did not go after them because there was an audit. Now the record shows that co-defendant Saul Rivera testified in his deposition that he never saw any such audit. As a matter of fact, they did not put in the record any audit as they did with the 2001, not 9-1, and there is an affidavit by one of the plaintiffs that was the head of the appointments and changes section of the human resources department saying and testifying that there was no such audit during the previous administration. So as far as your Honor's question, at least if they're hunting for merit principle violations, if what they're trying to do is have an agency that is compliant with the merit principle, at the very least they should go as far back as the previous audit. And that point has not been established in this case. And why can't they just look for, we're going to say, what we're really focused on is things that have been changing in this country, we've been in this territory, we've been moving in a certain direction in the commonwealth, and now we've got Rule 14-1, which crystallizes a particular application of merit principle. So we're going to go back in time to when the administration came in with when 14-1 became effective. Well actually 14-1 became effective prior to 2001. It was a regulation that was established in 1999, that was approved in 1999, and it became effective in January 2000, which was still under a prior administration. But the fact of the matter is that had the audit report stated since there was a change, and there's no evidence that there was a change, that there was no similar provision in prior regulations, but assuming there was, since we have 14-1 and it has been used since 2001, we're going to look at those transactions because of the novelty of the rule. But that's not what they did. What the report states is we're coming in and we're very, very concerned about observance of the merit principle, so we need to check every single personnel file and identify merit principle violations. That's what they set out to do. So I would understand that argument, which is not being made by the defendants, had the initial intent announced being that they're going to hunt for that particular merit principle violation. And at the end of the day, every single merit principle violation entails the novelty of an appointment. Under Article 4 of the Puerto Rico Civil Code, acts committed against the law are null and void. So it doesn't really make a difference. Your argument seems to come down to the Equal Protection Clause requires that an employer, when it goes back, be subject to some principle, a constitutional principle, that it doesn't have a free choice about how far back it goes. You seem to say it goes back as far as it a prior audit, which I don't understand. I would understand an argument that it goes back to enactment of a law, but what is the federal constitutional principle that's involved here? Well, it is tied to what is being purported as the action that these defendants are making. They're saying, we're going to do a general audit of every single personnel file in the agency, and we're going to identify and remedy merit principle violations. If that is what the agency is saying that it's going to do, then it should indeed audit all personnel files and identify all... Even if the agency considers those people to be dissimilarly located. Well, Your Honor, actually what they're trying to do is change similarly located for identically located, because if they're identifying merit principle violations in the lack of competition... Okay, I have it. I have your argument. Thank you, Your Honor. Good morning. This is Counselor Melissa Gonzales on behalf of the State Insurance Fund. I will try to address each and every allegation of the plaintiff. First of all, as what plaintiffs, according to the record and what Counsel just said, the only group that the plaintiffs belong, they're only similarly situated to the 232 employees that were part of the audit and whose positions were annulled as part of the audit. As the record shows, during that audit, all the personnel files of all the employees of the State Insurance Fund were reviewed. They found 232 appointments that were not compliant with the regulations of the State Insurance Fund. The 232 positions were annulled. Those employees were part, some were part of the NPPs, some were part of the PDPs, and some were not affiliated. So they were all treated the same, although plaintiffs are trying to compare themselves with some other groups that, in fact, from the employees period 2001, that they were not affected by this audit. First of all, this audit was already validated by the Gonzales-Agarra case. Second of all, so that should not be an issue in this case, because the way that this audit was performed and the period of time that it is. He seems to derive from the Puerto Rico Supreme Court decision a, may I finish? Yes. A notion that the Puerto Rico Supreme Court went well beyond the facts of this case in sustaining the audit, but seemed to say, he says, that the merit principle is a valid principle and it has to be enforced, period, which enables him to go back in time to a prior administration and say, well, this audit was good, but they failed to enforce it, so here it shouldn't be used against our people, because that's an equal protection violation. I think that's implicit in his argument. Do you read the Puerto Rico Supreme Court decision that way? Yes, of course, I do. Yes, I do, Your Honor. And, in fact, in... Yes, you do read it that way? Yes. No, I didn't read it that way, Your Honor. I'm sorry. Plaintiffs, in this case and in their brief, they are saying that Gonzalez-Segarra is a decision from the Puerto Rico Supreme Court and they had to abide by this decision, so they are not arguing this decision, that decision, and according to that case, this audit was validated. So, and this same court, the Court of Appeals, in the case of Nancy Casiano, said that it was very important for cases like this to wait for what the Puerto Rico Supreme Court was going to say regarding that audit, in order for them, for the cases in the federal courts to be correctly addressed, and that's what happened. The Puerto Rico Supreme Court already had a decision, had a determination, and validated this audit. So, in that regard, I understand that this is our position, that the issue of how far the Supreme Court that audit went should not be an issue in this case. If I understand the plaintiff's argument, I think they're trying to say what your client decided is we're just going to look for violations of the merit principle that occurred on the watch of the other party, knowing that we're therefore likely just to flip their guys, not our guys, and that's how they picked the date, was it had nothing to do with anything else. It's just, let's go in and see if we can flip as many changes that the other guys made, and there's your discrimination. How do you respond to that? Well, the problem with that argument is that their duty, the plaintiff's duty, was to put this court in the position to conclude that the state insurance fund had an obligation to go back for an X kind of period of time, a specific period of time back, and they didn't put this court in this position. They expressly disavow a First Amendment claim. They say they are not here on First Amendment grounds. They are here on equal protection grounds. Isn't that correct? Well, that's what they said, but their arguments are And the argument is inconsistent. Yes, of course it's inconsistent with the Equal Protection. Okay, thank you. Thank you. Thank you. Thank you. Good morning. On behalf of I would like to start addressing the court's concern about the reading of the Gonzales-Segara court decision. In that case, the Puerto Rico Supreme Court actually concedes that open job announcements are not always necessary to be conformed to the merit principle. I would like to cite from page 2189 of the appendix the words of the Puerto Rico Supreme Court. It says, The Court of Appeals, based on that case, affirmed that in recruiting, selection, or promotion processes, the agencies are not always obligated to publish open competition job announcements to comply with the principle of merit incorporated in these laws. The premise outlined by the Intermediate Appeal Forum is correct. Therefore, the Puerto Rico Supreme Court expressly said that it's not always necessary. So you say as a matter of state law, the Puerto Rico Supreme Court has already rejected their claim that these other categories of people are similarly situated. Basically. Well, I think everything else is apparently covered. I would only like to address the qualified immunity of a police, even assuming that plaintiff's right has been violated. A police will be entitled to qualified immunity in this case because an objectively reasonable official in these circumstances would have believed that the annulments did not violate a plaintiff's right. There are here legitimate reasons to the annulments, such as the audit and actually the consensus in our opinion. If you have any questions for me. No, thank you all.